---

## Sᴛᴀᴛᴇ *v.* Hᴇʀʀᴏɴ.

### Opinion delivered July 3, 1911.

LɪQᴜᴏʀꜱ—ᴜɴʟᴀᴡꜰᴜʟ ꜱᴀʟᴇ.—One who buys liquor for himself and another person from a licensed dealer. each paying half of the purchase money, and divides it equally between them, is not guilty of selling liquor.

Appeal from Baxter Circuit Court; *John W. Meeks,* Judge; affirmed.

*Hal. L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellant.

This case is controlled by *Foster* v. *State,* 45 Ark. 361, and appellee is punishable as an aider and procurer of the sale of liquor to a minor.

*Z. M. Horton,* for appellee.

The evidence shows that appellee and the other boy were joint purchasers of the liquor, or partners in the purchase. By ordering it in his own name, appellee was acting only for himself and as agent for the prosecuting witness, which, according to the authority relied on by appellant, is not punishable. Under the evidence here, this case is controlled by the case of *Fenix* v. *State,* 90 Ark. 589. See also 72 Ark. 14; 90 Ark. 579.

WOOD, J. Appellee was indicted by the grand jury of Baxter County for the crime of selling liquor to a minor. He was tried and acquitted. Clifton Dunbar, a witness for the State, testified as follows:

"I am well acquainted with the defendant Herron. Sometime before the March term, 1910, of the Baxter Circuit Court, the defendant Ray Herron and myself got to talking about ordering some whisky. We got together on the way to school and agreed that we would order some whisky. It was agreed between us that Ray would order the whisky for both of us. I understood that he would order it from somewhere down below. I gave him 75 cents, with the understanding that one-half gallon of whisky would cost, delivered at Cotter, a dollar and a half. I do not remember the name of the firm from whom he ordered it. In two or three days we met again at a barn near Ray's house, and he had the half-gallon of whisky. The seal on it had never been broken. It was in a jug. We divided the whisky, pouring my half into two bottles. I am now fifteen years old. Was fourteen years old when the tranaction took place. If Ray Herron had any written order from either of my parents, I don't know anything about it."

Appellee testified in his own behalf as follows: "I am sixteen years old, and am acquainted with Clifton Dunbar. Some

time during last spring or winter Clifton Dunbar and I, who were attending school at Whiteville, got together one Friday evening and got to talking about wanting some whisky, and finally agreed to order some. It was agreed between us that Clifton was to give me 75 cents, and I was to put in 75 cents, and that I was to send this amount of money to Anderson & Company, of Newport, Ark., which we both understood would get us a half gallon of whisky delivered to us at Cotter. I took the 75 cents that he gave me, added to this 75 cents of my own, and with this bought a postoffice money order, which I sent to Anderson & Company, of Newport, Ark., and asked them to send me a half gallon of whisky. I received the one half gallon of whisky at the express office at Cotter, Ark., and took it home, after which Clifton Dunbar and I met and divided the whisky between us. Clifton took one quart, which was poured into two bottles, and I took the other quart. The seal had never been broken on the half gallon jug when I went to divide it. · We simply wished to get some whisky, and ordered it in this way. I understood that Anderson & Company, at Newport, were licensed liquor dealers at that time. I did not sell any liquor to Clifton Dunbar, nor did I give him any. I did not make one cent out of this transaction, and had no interest in the sale of the whisky."

The court, at the request of the appellee, gave the following instructions :

"If you find from the evidence that the defendant and Clifton Dunbar entered into an agreement between themselves by which they agreed to order one half gallon of whisky from Newport, Arkansas, and each put in their part of the necessary money to buy the same, and that by agreement the whisky was ordered in the name of the defendant, for said defendant and Clifton Dunbar, and that when said whisky was received by said defendant he and the said Clifton Dunbar got together and divided said whisky, each taking that part of the same for which he had advanced the purchase money, you will find the defendant not guilty."

"2. If you find from the testimony beyond a reasonable doubt that the defendant in this county and within one year before the filing of the indictment herein, without any special agreement as to how the liquor should be obtained, took the seventy-five

cents from the prosecuting witness for the purpose of ordering liquor for one or both of them, and that defendant ordered the liquor in his (defendant's) name, and that he delivered to the prosecuting witness one quart of said liquor in this county, then this would constitute a sale by defendant to the prosecuting witness; and if you further find from the testimony beyond a reasonable doubt that at said time the said prosecuting witness was a minor, and that defendant did not have the written consent of the parent or guardian of said prosecuting witness to make such sale to him, then it would be your duty to convict him."

The State duly excepted to the giving of these instructions. A verdict of not guilty was rendered, judgment was entered accordingly, discharging the defendant, and the State prosecutes this appeal.

In *Whitmore* v. *State*, 72 Ark. 14, Judge RIDDICK, speaking for the court, said: "The fact that one solicits another to permit him to purchase or order whisky for him may tend to show that the one who solicits intends to make a profit out of the transaction, and that he really intends to make a sale of the whisky to the party for whom he pretends to order. But, though it may be evidence of a sale, it is not the same thing as a sale, and the party who solicits may be entirely innocent of making a sale. If one wishing to purchase a half gallon of whisky comes to the conclusion that he can procure it on better terms by getting his neighbor to join with him in the purchase of a gallon, each taking half a gallon, he has, under our statute, the right to do so; and it is therefore incorrect to say that if one solicits another to let him purchase whisky for him, and the other permits him to do so, the one soliciting is guilty of selling whisky." The court further said in that case: "There is nothing in our statute which makes it unlawful for one to purchase whisky for another without license. License is required of those who sell, not of those who buy; and one may purchase, either for himself or another, all the whisky in the State, but under our statute he commits no crime by making the purchase." Again: "But it is not claimed in this case that the party in St. Louis had no right to ship this whisky to the parties here in any quantities that they might order, nor was there any evidence to show that the defendant was acting as the agent of the seller."

In *Fenix* v. *State,* 90 Ark. 589, Fenix, Smith and Whitton were all in Fenix's meat market in Leadville, Boone County, Arkansas, and some one of the three suggested the purchase of some whisky. Each of the three put in 25 cents, making 75 cents, which the defendant Fenix took and gave to Henry Smith, who was not one of the joint purchasers. Henry Smith went to one Dick Cunningham, who was unlawfully selling liquor, bought a pint and returned it to Fenix, and Fenix returned it to the shop, and the parties who had put up the money drank it. The sale of liquor in that case was unlawful, but the court held that Fenix was not guilty of any unlawful participation therein.

The doctrine in those cases, we think, rules the present case, and shows that the appellee here was not guilty of any unlawful sale under the undisputed facts. Appellee and Dunbar were joint purchasers of the liquor, and not sellers.

In the case of *Foster* v. *State,* 45 Ark. 361, which is relied on by appellant, the proof was to the effect that a minor, not wishing to involve whisky sellers in trouble by proof of any of them having sold direct to him, gave the appellant Foster, whom he met on the streets of Malvern, fifty cents and requested him to go and purchase the whisky for him. Foster purchased the whisky with it for the minor at a saloon in which he was not employed or interested, and delivered it to the minor. In that case the purchase was by a third party directly for a minor, the third party undertaking to do for him what he could not do for himself. In that case there was reason for the conclusion that Foster made himself a party to the unlawful sale of whisky; but in this case the appellee and his associate, Dunbar, acted for themselves. Appellee was not a go-between in any sense. He was simply making a joint purchase of whisky for himself and Dunbar. He was not in any sense aiding the seller in making an unlawful sale of liquor to Dunbar. In the Fenix case, *supra,* it is said: "One who buys liquor for himself from a person not authorized to sell same is not guilty of selling liquors unlawfully. That is precisely the case here. The first instruction was correct. The second instruction was as favorable to appellant as it could ask, and it is not prejudiced by the action of the court in giving the same.

The judgment is affirmed.